UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PATRICK J. CAVANAUGH,                    )   Case No.: 1:17-cv-00832 LJO JLT
                                         )
           Plaintiffs,                   )   ORDER DENYING MOTION TO AMEND[1] THE
                                         )   CASE SCHEDULE
     v.                                  )
                                         )   (Doc. 64)
DONNY YOUNGBLOOD, et al.,                )
                                         )
           Defendants.                   )
                                         )
_____  )

Mr. Cavanaugh alleges that he was housed at the Lerdo jail facility to attend court proceedings in Kern County Superior Court. Before the transfer to Lerdo jail, he was in the custody of the CDCR and housed at a state hospital. While at Lerdo, he was misclassified and placed in a cell with Norteno gang members despite that he is a drop-out from that gang. He has sued employees of the State of California and the County of Kern for the injuries he sustained after he was attacked.

In his current motion filed one day before the deadline to complete non-expert discovery, he moves the Court to amend the case schedule. Because the Court finds that he has not shown good cause for the amendment, the motion is **DENIED**.

**A.    Background**

The Court issued the case schedule on May 4, 2018. (Doc. 48) The Court ordered the parties to

_____

[1] The motion is styled as "Motion to Modify Schedule and for Limited Discovery." (Doc. 64) Though not clear, it appears that the plaintiff is seeking to exceed the 10-deposition limit and for the Court to order a site inspection.

1

complete non-expert discovery by February 5, 2019. Id. at 2. The Court selected this date at counsel's request. (Doc. 44 at 6)

The plaintiff attorney, Mr. Karan, reports that he propounded written discovery on the defendants on June 25, 2018. (Doc. 64-2) The county's attorney[2], Mr. Fontes, responded on August 6, 2018 and the state responded on August 10, 2018. Id. Mr. Karan was not satisfied with the responses and sent meet-and-confer letters to the county on November 15, 2018 and to the state August 19th and 20th. Id. Apparently, the state has not amended the responses and the plaintiff has taken no further action. Id. The county amended its responses on December 6, 2018. Id. After taking depositions, the plaintiff propounded additional written discovery on January 4, 2019. (Doc. 64-2 at 4-5.)

### 1. The first "four" depositions

In May 2018, Mr. Karan "proposed" to take depositions in August 2018 and indicated that he wanted to take all four of the intended depositions at the same time, so he only had to make one trip to Bakersfield. (Doc. 64-2 at 2-3) Because only three of the four deponents were available in August, Mr. Karan chose not to take any of the depositions at that time. Id. at 3. Once again, in November, only three of the four deponents were available on the dates preferred by Mr. Karan, though the fourth, Sheriff Youngblood, was available on dates later in the month. (Doc. 65-1 at 3) Once again, Mr. Karan chose not to take the depositions, apparently because he did not wish to make two trips to Bakersfield. Id. In December 2018, Mr. Karan sought to set the depositions of the four deponents on December 10 and 11. Id. at 4. Mr. Fontes indicated that the depositions could be set on those dates, but that discussion was needed related to Sheriff Youngblood who had no personal knowledge of the events. Id. Mr. Karan then notified Mr. Fontes that the December dates were no longer good and proposed later dates in December. Id. Because Mr. Fontes was unavailable, Mr. Karan set the depositions unilaterally to occur on January 3 and 4, 2019. Id. After taking the depositions, the plaintiff propounded additional written discovery and set eight additional depositions. (Doc. 64-2 at 4-5.)

///

---

[2] For ease of reference, the Court refers to the defendants employed by the County of Kern and the entity as the "county." Likewise, the Court refers to the defendants employed by the State of California as the "state."

### 2. The "additional depositions"

On January 3, 2019, the paralegal for Mr. Fontes wrote to Mr. Karan proposing deposition dates for four depositions, including the plaintiff. (Doc. 65-1 at 35-36) The paralegal proposed January 21-23, 2019, January 25, 2019 and January 28-February 1, 2019. Id.

On January 7, 2019, Mr. Karan responded and identified additional depositions[3] he wished to take. (Doc. 65-1 at 35) He rejected January 23 and February 1 by stating, "I cannot agree to split the depositions with a weekend."[4] Id. Rather, he proposed the depositions occur either January 21-23[5], 2019, January 25, 2019 or January 28-29, 2019. Id.

On January 14, 2019, Mr. Fontes provided a detailed email indicating when the proposed deponents would be available. (Doc. 65-1 at 38) At that time, he had not yet been able to identify the person who would be deposed for the entity on the topic described by Mr. Karan as "the process for receiving civil detainees, including those detained pursuant to Penal Code sections 1026, et seq." Id. at 35, 38. Nevertheless, apparently, the depositions were completed.

### 3. The "Investigating Officer"

On January 2, 2019, Mr. Karan sent an email to county's attorney indicating he wanted to depose "the investigating officer of the 7-3-16 incident." (Doc. 64-2 at 4) Mr. Fontes provided dates that "James Dunlap (Investigating officer of 07/03/16 incident)" was available. Id. By this time, about five months had passed since Mr. Karan was provided the "entire K.C.S.O. Investigation Report and all supplemental reports under the lead report, which identified every deputy and officer involved in the investigation." (Doc. 65-1 at 4-5) The "lead report" was authored by James Dunlap. Id. The report identified 18 officers who were involved in some manner in the incident or its aftermath and detailed each officer's specific role. Id. at 47-48. Notably, Deputy Dunlap interviewed the plaintiff. Id. at 47.

At his deposition, Deputy Dunlap testified that he "put together documentation of basic facts with the reports of interviews with witnesses written by other deputies" but did not "'investigate' the incident." (Doc. 65-1 at 4). He reported that he was told that "a professional team of investigators

---

[3] Three of these were included on the list the paralegal was attempting to schedule in her email.
[4] The Court concludes that was, once again, due to Mr. Karan's desire to not make more than one trip to Bakersfield.
[5] The Court cannot make sense of this proposed date given Mr. Karan's statement immediately after which refuses to conduct the depositions on January 23rd. Id.

1  was taking over." Id. at 5.

2  **4.    The Community Program Director**

3  Mr. Karan emailed Mr. Fontes on December 19, 2018 and reported that he wished to depose

4  "the Community Program Director." (Doc. 64-2 at 31) The next day, Mr. Fontes reported, "I do not

5  know the identity of the Community Program Director, nor do I represent any such individual. The

6  County's Behavioral Health and Recovery Services ("BHRS") provides mental health care in the jail. I

7  do not know who oversees this care, but will try to check with BHRS and let you know what I find

8  out." (Doc. 64-2 at 30) Later in the day, Mr. Karan responded, "The Sheriff identified Kern County

9  Behavioral Health & Recovery Services as the party responsible for maintaining the program of

10  treatment."[6] Id.  Mr. Fontes responded on December 26 and stated, "Behavioral Health has identified

11  Greg Gonzalez as being the person responsible for oversight of all mental health services in the jail. I

12  have not been able to speak with him, and do not know at this time whether there is someone who

13  serves as the "Community Program Director". I anticipate speaking with him shortly after the

14  holidays." Id. at 29.  With the deposition of Mr. Gonzalez confirmed, the same day, Mr. Karan then

15  requested the deposition of the "CPD," whom he described as, "PC 1026 intimates that the CPD is an

16  individual who makes decisions. Specifically, I want to depose the person who made housing

17  decisions for Mr. Cavanaugh as described in PC 1026. If that was not a single person, then I need the

18  PMK for policies and procedures, and for details of decisions made related to Mr. Cavanaugh." Id. at

19  33.

20  Mr. Fontes was advised on January 3, 2019, that Ashley Heitzig was the CPD.  (Doc. 65-1 at

21  6) Dr. Heitzig's deposition occurred on January 24, 2019. Id.    At that time, counsel learned that

22  though Dr. Heitzig was the CPD currently and that the previous CPD had retired. Id.

23  **5.    The site inspection**

24  On December 19, 2018, Mr. Karan sent an email to Mr. Fontes asking to be allowed to inspect

25  pertinent areas of the jail while he was in Bakersfield on January 3-4, 2019. (Doc. 64-2 at 6; Doc. 65-1

26  at 6) Despite the lack of formal request and short notice, Mr. Fontes agreed to accommodate the

27

28  [6] It appears Mr. Karan was referring to Youngblood's declaration (Doc. 65-1 at 69-71), which was prepared to explain his lack of involvement in the incident involving Mr. Cavanaugh.

request so long as the jail could accommodate it as well. (Doc. 65-1 at 7) On December 26, 2019, Mr. Fontes reported that the jail could accommodate the request and reported certain restrictions and requested the list of names of those who would visit the jail. Id. Mr. Karan did not respond. Id. Mr. Fontes again emailed Mr. Karan on January 2, 2019 and inquired whether Mr. Karan still intended to conduct the inspection and, if so, again requested the list of names. Id. Mr. Karan responded quickly and indicated he wanted to do the inspection and only he would attend the inspection. Id. Apparently, the jail did not schedule the visit given the information about who would attend was outstanding, and when Mr. Fontes tried to confirm the jail inspection on January 4, 2019, the jail indicated that two-day's notice was insufficient time and the visit could not occur. (Doc. 65-1 at 7)

**B.      Amendments to the Case Schedule**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once entered, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3rd Cir. 1986).

A scheduling order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Johnson, 975 F.2d at 610. According to Fed. R. Civ. P. 16(b)(3), a case schedule may be modified only for good cause and only with the judge's consent. Fed. R. Civ. P. 16(b). In Johnson, the Court explained,

> . . . Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment) . . .[T]he focus of the inquiry is upon the moving party's reasons for seeking modification . . . If that party was not diligent, the inquiry should end.

Johnson, at 609. Parties must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999); see Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D. W.Va. 1995). In part, the "good cause" standard requires the parties to demonstrate that "noncompliance with a Rule 16 deadline occurred or will occur,

notwithstanding her diligent efforts to comply, because of the development of matters which could not

have been reasonably foreseen or anticipated at the time of the Rule 16 Scheduling conference . . ."

Jackson, 186 F.R.D. at 608, emphasis added.

Moreover, seeking an extension of time before the deadline has expired is required. Local

Rule 144(d) reads,

> Counsel shall seek to obtain a necessary extension from the Court or from other counsel
> or parties in an action as soon as the need for an extension becomes apparent. **Requests
> for Court-approved extensions brought on the required filing date for the
> pleading or other document are looked upon with disfavor.**

Emphasis added. This Court has held that the failure to seek an extension as to any deadline in the

scheduling order well before the date passes is a basis for denying the requested amendment. In Hardy

v. County of El Dorado, 2008 U.S. Dist. LEXIS 75925, at *4 (E.D. Cal. Aug. 29, 2008), the Court

rejected a motion to extend the discovery cut-off, filed three days before the discovery cut-off, for lack

of diligence. The Court held, "Indeed, requesting the Court to modify the Scheduling Order to extend

the discovery cut-off date three days before the deadline does not constitute diligence."

In the scheduling order issued in this case, the Court warned, "**No motion to amend or**

**stipulation to amend the case schedule will be entertained unless it is filed at least one week**

**before the first deadline the parties wish to extend.**" (Doc. 48 at 3, emphasis in the original)

nevertheless, the plaintiff filed this motion one day before the non-expert discovery despite that this is

the primary deadline he wished to amend. Mr. Karan offers no explanation for this delay.

Mr. Karan also does not explain why he chose to wait to take the first round of depositions.

Though he alerted his opponents in May that he wanted to take them in August, he doesn't explain

why he chose to delay from May to August[7]. Likewise, though he wished to take all of the depositions

at one time, to preclude a second trip to Bakersfield, he should not have allowed this *preference* to

dictate when he conducted the depositions. When he agreed to represent the plaintiff in this action and

he must have known the case was venued in Kern County. Thus, in accepting the representation, he

must have made his peace with the fact that significant travel would be involved.

---

[7] It cannot be that he needed the written discovery before the depositions because he took the depositions without receiving
satisfactory responses.

Likewise, though the Court appreciates and expects counsel to show courtesy to opponents, this cannot be a basis for failing to conduct the discovery the client needs. This is especially true in cases where opposing counsel work in larger offices where, as necessary, coworkers can cover an attorney's unavailability. Indeed, Mr. Karan came to this conclusion when he unilaterally set depositions in this case in early January. (Doc. 65-1 at 4) He does not explain why he waited until this late date to take this action.

The fact that Mr. Karan chose to wait for Mr. Fontes to informally obtain identities of deponents, likewise, does not justify the failure to take the depositions earlier. Rule 30(b) does not require that the identity of the deponent be known to the noticing party. The Rule reads,

> A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address. **If the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs.**

Fed.R.Civ.P.30(b)(1). Similarly, a deposition notice or subpoena directed to an entity requires *only* the name of the entity and a list of the topics the deposition will cover. Fed.R.Civ.P.30(b)(6). Transferring the obligation of producing the proper person to the opponent or entity via a properly noticed deposition or subpoena, ensures the deposing party can *require* through motion to compel, if necessary, that the correct deposition occurs. Here, the plaintiff noticed the depositions of Dunlap[8], Davis and Heitzig and took those depositions. Only after taking the depositions did he learn that they were not the correct deponents. Having chosen this method of noticing the depositions, the plaintiff cannot complain that the method was faulty[9].

Finally, on October 9, 2018—four months before the non-expert discovery deadline—the Court reminded counsel of their obligations to complete discovery within the current deadlines, to

---

[8] The report of the incident detailed that 18 people were involved in gathering the facts of what occurred. Even now, the Court is at a loss to understand exactly who the plaintiff believes was the "investigator" of the event or exactly what information he sought but did not obtain from Mr. Dunlap. It appears from Mr. Fontes that there are no other reports or "investigators" (Doc. 65-1 at 4-5) despite Dunlap's belief to the contrary.

[9] That being said, the Court does not condone the misinformation informally provided to Mr. Karan related to Dr. Heitzig. On the other hand, Mr. Fontes was clear that he did not represent Dr. Heitzig, which meant that Mr. Karan could have contacted her or her agency to discuss the information he sought in the deposition.

In addition, Mr. Karan has cited the Court to no authority that Rules 26 or 37 would allow it to enforce an informal discovery request.

1   meet and confer about discovery disputes and to seek the Court's assistance promptly if they could not

2   resolve their disputes. (Doc. 62) From Mr. Karan's description of the events[10], throughout the

3   discovery period, he faced nothing but a lack of cooperation and obstruction in the discovery process.

4   Despite this, for whatever reason, he chose not to seek the Court's intervention.  Once again, having

5   chosen this course, he cannot complain about its outcome.

6         In short, the Court finds that the plaintiff has failed to demonstrate he acted with diligence to

7   discover this case.  He points to no unforeseen circumstances that precluded him from meeting the

8   deadlines and, it appears, he chose to wait until the eleventh hour to conduct the discovery he needed.

9   In doing so, he was caught flat-footed.  This is not legal justification to amend the case schedule.

10   Consequently, the motion to amend the case schedule is **DENIED**.

11   **C.**     **Motion to Compel Discovery**

12         The motion is titled, "Motion to Modify Schedule and for Limited Discovery." (Doc. 64)

13   Though not clear, it appears that the plaintiff is seeking an order permitting him to exceed the 10-

14   deposition limit, for the Court to shorten the time for seeking documents in conjunction with a

15   deposition, and for the Court to order a site inspection.

16         The defendants assert that they were not engaged in a meet-and-confer effort related to this

17   motion to compel discovery. (Doc. 65-1 at 2-3; Doc. 66 at 2) Moreover, the Court was not apprised of

18   any current discovery disputes and Mr. Karan did not seek a conference to seek an informal resolution

19   of them.  Rather, Mr. Karan approached the Court only for an informal conference related to amending

20   the case schedule[11] and, rather than holding the conference, the Court authorized Mr. Karan to "file a

21

---

22   [10] Mr. Fontes' declaration details a contrary view.

  [11] The email, which was addressed by the Clerk of the Court, read,

23

24       From:    Ken Karan <kkaran.law@gmail.com>
      To:       JLTorders@caed.uscourts.gov

      Cc:       Scott Fontes <sfontes@kerncounty.com>, Matthew Day <Matthew.Day@doj.ca.gov>

25       Date:     02/03/2019 10:35 AM
      Subject: February 5 Deadline in Cavanaugh v. Youngblood, et al., Case No.: 1:17-cv-00832-DAD-JLT

26

      Greetings:

27

      I write in regard to the non-dispositive discovery deadline set for February 5, 2019. Circumstances require that

28       additional depositions and document discovery be conducted. Good cause exists.

1  formal motion to amend the case schedule." (Doc. 63) Thus, the motion related to compelling

2  discovery fails to comply with the scheduling order (Doc. 48 at 3) and, on that basis it is **DENIED**.

3  Likewise, because the Court denies the motion to amend the case schedule, the motion to compel

4  discovery is **MOOT**.

5        Finally, the Court would **DENY** the motion on its merits for several reasons.  First, there is no

6  showing why shortened time would be needed for deponents to produce records.  Second, there is no

7  formal discovery request, related to the site inspection, the depositions of the "true" investigator or the

8  CDP or a Fed.R.Civ.P.30(b)(6) deposition notice that the Court could enforce.  Third, it appears that

9  plaintiff has taken only six depositions: Hull, Jennings, Fuentes (Doc. 65-1 at 4), Dunlap (Id. at 5),

10  Heitzig (Id. at 6) and Davis (Id. at 6).  Though Mr. Karan describes the depositions he'd like to take,

11  he fails to explain how these depositions would bear on the issues raised in the litigation or why he

12  could not gather the information he needs in four additional depositions.

13  **ORDER**

14        For the reasons stated, the Court **DENIES** the motion to amend the case schedule and for

15  discovery.

17  IT IS SO ORDERED.

18     Dated:   **February 26, 2019**         **/s/ Jennifer L. Thurston**

19                                     UNITED STATES MAGISTRATE JUDGE

---

25  I proposed a stipulation to defense counsel. State counsel engage [sic] in a brief discussion and declined. County counsel did not reply to the proposal.

27  I seek the Court's guidance with regard to whether an informal telephone conference with the Court, whether a written request for miscellaneous relief, or whether a noticed motion to modify the schedule best suits the Court's procedures in these matters. Thank you for your consideration.

28  Best regards,
Ken Karan